# 20-3977-cv(L), 20-3978-cv(CON)

# United States Court of Appeals

*for the*

# Second Circuit

E. JEAN CARROLL,

*Plaintiff-Appellee,*

– v. –

DONALD J. TRUMP, in his personal capacity,

*Defendant-Appellant,*

UNITED STATES OF AMERICA,

*Movant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR DEFENDANT-APPELLANT

MARC E. KASOWITZ
KASOWITZ BENSON TORRES LLP
*Attorneys for Defendant-Appellant*
1633 Broadway
New York, New York 10019
(212) 506-1700

# **TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT ..................................................................1

ARGUMENT .........................................................................................7

I. THE WESTFALL ACT APPLIES TO THE PRESIDENT ...........................7

    A. The Plain Meaning of "Any Employee of the Government" Includes the President.................................................................7

    B. Even Under Carroll's Construction That the Section 2671 List of Employees is Exclusive, the FTCA Applies to the President........12

II. PRESIDENT TRUMP WAS ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT. ..........................................................................16

    A. D.C. Law Governs the Scope-of-Employment Question....................16

    B. The Allegedly Defamatory Statements Were Made Within the Scope of Employment. ....................................................................18

        1. Addressing Issues of Public Concern is Within the Scope of the President's Employment...............................................18

        2. It is Irrelevant that Defamation is an Intentional Tort. ............21

    C. Carroll's Test Is Non-Justiciable........................................................24

    D. On-Point Authority Confirms that Trump Acted Within the Scope of Employment. ....................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Fed. Bureau of Prisons*,
  552 U.S. 214 (2008)..................................................................................9

*Allaithi v. Rumsfeld*,
  753 F.3d 1327 (D.C. Cir. 2014)..............................................................17

*Am. Soc'y. of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*,
  456 U.S. 556 (1982)................................................................................22

*Armstrong v. Thompson*,
  759 F. Supp. 2d 89 (D.D.C. 2011)......................................................22, 24

*Bailey v. J & B Trucking Servs., Inc.*,
  590 F. Supp. 2d 4 (D.D.C. 2008).............................................................17

*Bello v. United States*,
  93 F. App'x 288 (2d Cir. 2004) ...........................................................18, 19

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723 (1975)..................................................................................7

*Brownback v. King*,
  141 S. Ct. 740 (2021)................................................................................7

*Brumfield v. Sanders*,
  232 F.3d 376 (3d Cir. 2000) ....................................................................22

*Budik v. Ashley*,
  36 F. Supp. 3d 132 (D.D.C. 2014)...........................................................17

*Burgess v. United States*,
  553 U.S. 124 (2008)..................................................................................8

*CAIR v. Ballenger*,
  444 F.3d 659 (D.C. Cir. 2006)...........................................................*passim*

*Cheney v. U.S. Dist. Ct. for D.C.*,
  542 U.S. 367 (2004)................................................................................25

*Clinton v. Jones*,
  520 U.S. 681 (1997)..................................................................................24

*Cloonan v. Holder*,
  602 F. Supp. 2d 25 (D.D.C. 2009).............................................................17

*Conn. Nat'l Bank v. Germain*,
  503 U.S. 249 (1992)....................................................................................8

*Demas v. Levitsky*,
  291 A.D.2d 653 (3d Dep't 2002).........................................................21, 22

*Dist. of Columbia v. Bamidele*,
  103 A.3d 516 (D.C. 2014) .........................................................................20

*Dist. of Columbia v. Coleman*,
  667 A.2d 811 (D.C. 1995) .........................................................................17

*Dist. of Columbia v. Coron*,
  515 A.2d 435 (D.C. 1986) .........................................................................24

*Does 1-10 v. Haaland*,
  973 F.3d 591 (6th Cir. 2020) .....................................................................17

*Fort Stewart Sch. v. FLRA*,
  495 U.S. 641 (1990).....................................................................................9

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992)...................................................................................16

*Freiman v. Lazur*,
  925 F.Supp. 14 (D.D.C. 1996)...................................................................19

*In re Grand Jury Proceedings*,
  5 F. Supp. 2d 21 (D.D.C. 1998).................................................................26

*Harbury v. Hayden*,
  522 F.3d 413 (D.C. Cir. 2008)...................................................................17

*Hechinger Co. v. Johnson*,
  761 A.2d 15 (D.C. 2000) ...........................................................................20

iii

*Heindel v. Bowery Sav. Bank*,
  138 A.D.2d 787 (3d Dep't 1988)................................................................21

*Ierardi v. Sisco*,
  119 F.3d 183 (2d Cir. 1997) ....................................................................20

*In re Iraq & Afghanistan Detainees Litig.*,
  479 F. Supp. 2d 85 (D.D.C. 2007)........................................................17, 23

*Jacobs v. Vrobel*,
  724 F.3d 217 (D.C. Cir. 2013)..................................................................17

*Jordan v. Medley*,
  711 F.2d 211 (D.C. Cir. 1983)..................................................................20

*Klayman v. Obama*,
  125 F. Supp. 3d 67 (D.D.C. 2015)............................................................20

*Lowy v. Travelers Prop. & Cas. Co.*,
  2000 WL 526702 (S.D.N.Y. May 2, 2000) ...............................................24

*M.J. Uline Co. v. Cashdan*,
  171 F.2d 132 (D.C. Cir. 1948)..................................................................20

*Magowan v. Lowery*,
  166 F. Supp. 3d 39 (D.D.C. 2016)........................................................17, 19

*Majano v. United States*,
  469 F.3d 138 (D.C. Cir. 2006).............................................................17, 20

*McNeil v. Duncan*,
  2020 WL 1536252 (D.D.C. Mar. 31, 2020) ...............................................17

*Microsoft Corp. v. I4I Ltd. P'ship*,
  564 U.S. 91 (2011).....................................................................................9

*Mississippi v. Johnson*,
  71 U.S. 475 (1866)...................................................................................13

*N.X. v. Cabrini Med. Ctr.*,
  97 N.Y.2d 247 (2002)..............................................................................21

*New York Times Co. v. U.S. Dep't of Def.*,
499 F. Supp. 2d 501 (S.D.N.Y. 2007) ................................................................25

*Nixon v. Fitzgerald*,
457 U.S. 731 (1982) ...........................................................................................3

*Overton v. Ebert*,
180 A.D.2d 955 (3d Dep't 1992) ......................................................................21

*Penn Cent. Transp. Co. v. Reddick*,
398 A.2d 27 (D.C. 1979) .................................................................................*21*

*Pension Benefit Guar. Corp. v. LTV Corp.*,
496 U.S. 633 (1990) ........................................................................................15

*Quinones v. United States*,
492 F.2d 1269 (3d Cir. 1974) ..........................................................................26

*Rasul v. Myers*,
512 F.3d 644 (D.C. Cir. 2008) .........................................................................17

*Rausman v. Baugh*,
248 A.D.2d 8 (2d Dep't 1998) .....................................................................21, 22

*Rinaldi v. Holt, Rinehart & Winston, Inc.*,
42 N.Y.2d 369 (1977) ......................................................................................23

*Riviello v. Waldron*,
47 N.Y.2d 297 (1979) ......................................................................................24

*Sabharwal & Finkel, LLC v. Sorrell*,
117 A.D.3d 437 (1st Dep't 2014) .....................................................................23

*Samantar v. Yousef*,
560 U.S. 305 (2010) ....................................................................................10, 11

*Schecter v. Merch. Home Delivery, Inc.*,
892 A.2d 415 (D.C. 2006) ...............................................................................20

*Schneider v. Kissinger*,
412 F.3d 190 (D.C. Cir. 2005) .........................................................................25

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
  140 S. Ct. 2183 (2020)....................................................................9

*Shirvinski v. U.S. Coast Guard*,
  673 F.3d 308 (4th Cir. 2012) .........................................................26

*Smith v. Clinton*,
  886 F.3d 122 (D.C. Cir. 2018)........................................................22

*Steele v. Meyer*,
  964 F. Supp. 2d 9 (D.D.C. 2013) ...................................................23

*Swarna v. Al-Awadi*,
  622 F.3d 123 (2d Cir. 2010) ..........................................................20

*United States v. Germaine*,
  99 U.S. 508 (1878)..........................................................................14

*United States v. Holcombe*,
  277 F.2d 143 (4th Cir. 1960) .........................................................10

*United States v. Smith*,
  499 U.S. 160 (1991)...................................................................11, 12

*Weiner v. Doubleday & Co.*,
  142 A.D.2d 100 (1st Dep't 1988) ...................................................23

*Williams v. United States*,
  71 F.3d 502 (5th Cir. 1995) ...........................................................17

*Wilson v. Libby*,
  535 F.3d 697 (D.C. Cir. 2008)...................................................22, 27

*Wuterich v. Murtha*,
  562 F.3d 375 (D.C. Cir. 2009).......................................................27

**Statutes**

10 U.S.C. § 111 ...............................................................................10

28 U.S.C. § 451 ....................................................................12, 13, 15

28 U.S.C. § 2671 ........................................................................*passim*

**Other Authorities**

28 C.F.R. § 50.15 ................................................................................7

Restatement (Second) of Agency § 245 cmt. f ..................................................21, 24

Restatement (Second) of Agency § 247 cmt. c........................................4, 21, 22, 24

## SUMMARY OF ARGUMENT

Since the enactment of the Westfall Act, federal circuit and district courts have consistently applied it to Presidents, including Presidents Clinton, George W. Bush, and Obama.[1]  Carroll does not want the Westfall Act to apply to President Trump, so she asserts that it does not apply to the President of the United States at all.  Unable to point to a single decision holding that the Act does not apply to the President (apart from the Order), Carroll argues that, although the FTCA states that it applies to "any employee of the Government," it really applies only to the employees of a limited set of government agencies, which, she also argues, does not include the President.  But that contention is refuted by the plain language of the FTCA itself and, in case there were any doubt, by the legislative history of the Act.

Carroll also asserts that applying the Act to alleged defamation by federal officials would be "both wrong and dangerous."[2]  But she does not, as she cannot, explain why it would be "wrong and dangerous" to apply the Act to defamation claims but not to claims that a President funded a designated foreign terrorist organization for his own benefit, or that a Secretary of Defense authorized torture, or that a Secretary of State's use of a private e-mail server led to terrorists killing a

---

[1] Br. 15-16; Opp. 19 & n.3.

[2] Opp. 2.

1

diplomat, or that a Vice President and other senior executive officials outed a covert government agent for revenge -- all of which courts have held were covered by the Act.[3]

Carroll seems to concede that the President is an "employee of the Government," but argues that Presidents are not covered by the Act because the list of employees of government entities in the FTCA, 28 U.S.C. § 2671, states "'[e]mployee of the Government' includes" -- a list she incorrectly asserts does not include the President -- is exclusive because it otherwise would be superfluous. But the list is not superfluous. It plainly was meant to ensure that certain employees were included -- as Carroll herself concedes, to "specify that certain non-obvious entities fall within the general phrase" of "any employee of the Government"[4] -- not to exclude the President or any other federal employee. Indeed, where Congress intends definitions to exclude, it uses the term "means," not, as here, the term "includes." And where Congress intends to exclude the President from the coverage of a statute, it explicitly so provides. The canon of construction against superfluity thus has no application here, where the text of the statute is unambiguous that it covers "*any* employee of the Government."

---

[3] *Infra* 20, 22-23. *See also* Br. 46-47.

[4] Opp. at 33.

Carroll offers no response to the fact (Br. 23) that the Act's legislative history makes clear that Congress had the President specifically in mind when enacting the Westfall Act, by noting that when substituting for a federal employee as a defendant, "[t]he United States would . . . continue to assert other functional immunities, such as *Presidential . . .* immunity." H.R. Rep. No. 100-700, at 5 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 5945, 5948 (emphasis added).

Nor does or can Carroll explain why Congress would possibly want to exclude the President -- not to mention employees of the SEC or other federal agencies not listed in Section 2671 -- when it is the President who most needs to be protected from lawsuits allegedly arising from the performance of his duties. *See Nixon v. Fitzgerald*, 457 U.S. 731, 753 (1982) (noting that "the President [is] an easily identifiable target for suits for civil damages" which "frequently could distract a President from his public duties, to the detriment of not only the President and his office but also the Nation that the Presidency was designed to serve.").

Carroll also fails to rebut the Attorney General's certification that the conduct at issue here -- making statements and responding to reporters' questions on a matter of public concern -- was within the scope of the President's employment. Carroll agrees that D.C.'s choice-of-law rules apply here, but because she wants New York law to apply, she incorrectly cites cases concerning

3

which law applies to the underlying tort -- not which law applies to determine scope of employment. The D.C. Circuit has repeatedly held that the law of the jurisdiction where the employment relationship exists determines scope of employment -- which, here, of course is D.C.

As shown (Br. 32-33), under D.C. law, whether an employee acted within the scope of employment turns on whether the defendant was "on duty or on the job" when committing the alleged tort, and, as courts have repeatedly recognized, elected officials are "on the job" when they address or respond to reporters' questions about matters of public concern, including matters that relate to the official's private life. *E.g., CAIR v. Ballenger*, 444 F.3d 659 (D.C. Cir. 2006).

Carroll nonetheless contends that because defamation is an intentional tort, it "more readily suggests personal motivation" and therefore is not "in furtherance of his job duties." (Opp. 45-46, 55.) Carroll cites no authority to support this contention, which *Ballenger* and other cases refute, so instead Carroll cites entirely inapposite cases applying *respondeat superior* principles in "use of force" -- assault and battery -- cases. If anything, personal motivation is not relevant at all in defamation cases. *See* Restatement (Second) of Agency ("Restatement") § 247 cmt. c (1958) ("The motive of the spokesman [is] . . . immaterial if the master has apparently designated him to speak.").

4

Carroll asserts that the President's denials of her accusations were so "outrageous" that they had to have been purely personal in nature and therefore not within the scope of his employment. (Opp. 54.) But Carroll herself made her accusations a matter of public concern -- and it cannot possibly be said that a President's comments on a matter of public concern, no matter what one thinks of those comments, are outside the scope of the President's employment. In any event, again, whether conduct was purportedly "outrageous" is relevant only in determining whether "use of force" was within the scope of employment, and then only when it was unauthorized. It is irrelevant here, where the conduct was defamation and was authorized. And, finally, it also cannot possibly be said that Trump's denial of Carroll's accusations was more "outrageous" than the conduct in the scores of cases in which courts have found defendants to be acting within the scope of employment -- including under the Act -- when committing rape, torture, or armed assault, accusing a nonprofit NGO of sponsoring terrorism, or revealing the identity of a covert government agent.[5]

Carroll states that "[n]o President should be heard to argue that he is free to willfully injure private citizens" (Opp. 68), but no one argues that here. Rather, the Order must be reversed in a straightforward application of Congress's decision in

---

[5] *Infra* 22-23.

the Act that the government defend federal employees from lawsuits arising from scope-of-employment conduct, and it must be dismissed in a straightforward application of Congress's decision not to waive sovereign immunity for defamation.

In any event, there is a wide gulf between Carroll's rhetoric and reality. This is not a case where a President, without prompting, randomly targeted a private citizen. Rather, Carroll, a public figure (A44 ¶109, A215), accused Trump of terrible misconduct twenty years earlier in a book and magazine article for which she sought maximum publicity (A237). He denied her accusations in precisely the manner she expected. (A33 ¶62; Opp. 57.) A short time later, she sued him for defamation. Carroll had no intention or expectation that this would be a private, personal dispute, and it was not.

Here, Carroll concedes that Trump was entitled to deny her accusations, but argues that this Court should review and second-guess the content of those denials. (Opp. 54-55.) That, as shown, is not only contrary to established scope-of-employment law, but also to Separation of Powers principles. Deciding how a President should comment on matters of public concern or deny accusations of improper conduct or answer questions posed by reporters is not within the province of the courts.

6

## ARGUMENT

## I.    THE WESTFALL ACT APPLIES TO THE PRESIDENT.

As shown (Br. II), under the Act's plain language and legislative history, the President of the United States is an "employee of the Government" covered by the Act.[6]  Numerous judicial decisions have applied the Act to the President, and Carroll provides no sound reason for this Court to depart from that long-standing view of the statute, which Congress has not questioned, let alone sought to change.[7]

### A.    The Plain Meaning of "Any Employee of the Government" Includes the President.

Carroll does not dispute that the President is an "employee of the Government,"[8] but argues that to conclude that under this "literal" definition, the Act applies to the President is too "simple[]."  (Opp. 28-29).  Carroll contends that

---

[6] Carroll incorrectly asserts that "courts have not treated 'employee of the government' as a catch-all term."  (Opp. 31.)  Courts have done exactly that. *See* Br. 18-21; *Brownback v. King*, 141 S. Ct. 740, 745 (2021) ("FTCA streamlined litigation for parties injured *by federal employees* acting within the scope of their employment." (emphasis added).)

[7] *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 733 (1975) ("The longstanding acceptance by the courts, coupled with Congress' failure to reject [those courts'] reasonable interpretation of the wording of [the statute] . . . argues significantly in favor of" such interpretation).

[8] Carroll concedes as much by agreeing that the DOJ may represent the President under 28 C.F.R. § 50.15 (authorizing the DOJ to represent a "federal employee (hereby defined to include present and former Federal officials and employees).").  (Opp. 39.)

the Act does not apply to the President because, she claims, the President is not an employee of any of the entities listed in Section 2671's definition of "[E]mployee of the Government." (Opp. at 34.) But Congress, by prefacing the listed entities with the word "includes," made clear that the definition was meant to be non-exclusive and illustrative. (Br. 17-18.)

Carroll cites *Burgess v. United States*, 553 U.S. 124, 130 (2008) for the uncontroversial proposition that "[w]hen a statute includes an explicit definition, [courts] must follow that definition." (Opp. 18.) But, if anything, *Burgess* refutes her position here. There, the definition in the statute at issue used the word "means," which -- unlike the Act's use of the word "includes" -- "excludes any meaning that is not stated," *id.* (*See also* Br. 18 n.9.)

Carroll nonetheless argues that Section 2671's inclusion of the listed entities -- for example, the "executive departments" -- means that employees of entities not listed are excluded, because otherwise it would be superfluous to mention the included entities. (Opp. 24-25.) Canons of construction, such as the canon against superfluity on which Carroll relies, are employed only if the words of a statute are ambiguous, and "any employee of the Government" is not. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" (citation omitted)).

8

Carroll's "superfluity" argument also cannot be reconciled with her concession that the Act "uses 'includes' to specify that certain non-obvious entities fall within the general phrase" of "any employee of the Government." (Opp. 33.) If, as Carroll says, the Act's definition already includes "entities [that] fall within the general phrase," then those entities are also "superfluous." And, if, as Carroll contends, the definition were cabined by its list of entities, it also would have been superfluous to expressly *exclude* independent contractors, as Section 2671 does. (Br. 19-21.)

Plainly, Congress meant not to limit the coverage of the Act, but to ensure that the employees of certain entities -- including, as Carroll puts it, "non-obvious entities" -- would be included. *See Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2209-10 (2020) ("our preference for avoiding surplusage constructions is not absolute" and "redundant language" may be explained by the fact that it was later added to already broad statute); *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 106 (2011) ("[T]he canon against superfluity assists only where a competing interpretation gives effect 'to every clause and word of a statute'" not where both alternatives contain "excess language . . . . There are times when Congress enacts provisions that are superfluous[.]" (cleaned up)); *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 226 (2008) (a phrase is not superfluous if used to "remove ... doubt" about an issue); *Fort Stewart Sch. v. FLRA*, 495 U.S.

9

641, 646 (1990) ("technically unnecessary" examples may have been "inserted out of an abundance of caution").

Carroll erroneously asserts that the term "any employee of the Government" must not be all inclusive, because Congress amended the FTCA in 1966 to clarify that that term includes employees of the "military departments." (Opp. 30-31.) But before that amendment, "employee of the Government" *already* was defined to include employees of the "executive department," and "executive department" *already* unambiguously included "the military departments" -- *see* 10 U.S.C. § 111 (1949) ("The Department of Defense is an executive department of the United States" consisting of, among others, the Departments of the Army, Navy, and Air Force).[9] Therefore, adding "military departments" in 1966 would have been, under Carroll's argument, superfluous in the first place.

Carroll cites *Samantar v. Yousef*, 560 U.S. 305, 317 (2010), for the proposition that the Act does not apply to the President because the types of employees listed in Section 2671 "are categorically different from—not illustrative

---

[9] *See also United States v. Holcombe*, 277 F.2d 143, 145 (4th Cir. 1960) ("[T]he various armed services are parts of the 'executive departments' . . . within the Tort Claims act . . . ."); *Department of Defense*, Federal Register, https://www.federalregister.gov/agencies/defense-department ("The National Security Act Amendments of 1949 redesignated the National Military Establishment as the Department of Defense and established it as an executive department (10 U.S.C. § 111) . . . .").

of—that office." (Opp. 35.) But *Samantar* in no way supports Carroll's position.

There, the Supreme Court held that, under the Foreign Sovereign Immunities Act

("FSIA"), an individual is not a "foreign state" covered by FSIA, in part because

"foreign state" was defined to "include[]" certain "entit[ies]," such as "a state's

political subdivisions," which are categorically different from individuals.

*Samantar*, 560 U.S. at 314-17. Thus in *Samantar*, the petitioner sought to expand

the natural meaning of "foreign state" based on the definition's list of categorically

different entities. By contrast, Carroll seeks to *narrow* the natural meaning of

"employee of the Government" -- which she concedes includes the President -- by

resorting to Section 2671's list of covered employees or officers who are all

individuals and from whom the President is not at all categorically different.

In straining to support her position, Carroll mischaracterizes *United States v.*

*Smith*, 499 U.S. 160, 173 (1991) -- which held that "[w]hen Congress wanted to

limit the scope of immunity available under the [Westfall] Act, it did so expressly."

(Br. 20, 28.) Carroll contends that *Smith* held only that the Act "required an

express exclusion to show that somebody who otherwise enjoyed FTCA immunity

could still face liability based on a separate federal statute, not to show that

somebody fell within the FTCA's coverage in the first place." (Opp. 35 n.13.)

The Supreme Court's holding was not so limited. In *Smith*, as here, the plaintiff

sought to limit the application of the Act, there arguing that it applied "solely to

11

those Government employees not already protected from tort liability . . . by a pre-existing federal immunity." *Id.* at 172-173. The Court expressly rejected the attempt to narrow the Act's scope because "[n]o language . . . in the statute purports to restrict the phrases 'any employee of the Government,'" and "if Congress had intended to limit the protection under the Act . . . it would have said as much." *Id.* at 173. The same reasoning applies here. Because Congress did not expressly exclude the President, the President is covered. (Br. 20.)

**B.      Even Under Carroll's Construction That the Section 2671 List of Employees is Exclusive, the FTCA Applies to the President.**

Even assuming *arguendo* that Section 2671's list is exclusive, Carroll's contention that the term "executive departments" in that list does not include the "Executive Branch," and therefore does not include the President, is incorrect as well.

Carroll concedes that the "starting point" for construing Section 2671 is 28 U.S.C. § 451 (Opp. 21), which provides that:

> the term 'department' means one of the executive departments enumerated in section 1 of Title 5, ***unless the context shows that such term was intended to describe the executive, legislative, or judicial branches of the government.***

(emphasis added). Carroll ignores that, under Section 451, the "context" here -- including the Act's expansive purpose, its use of the term "includes," and its

12

legislative history -- establishes that "executive departments," as used in Section 2671, was plainly "intended to describe the executive . . . branch[]." (Br. 24-28.)[10]

Carroll's assertion that "there is no affirmative support in relevant historical usage for reading 'the executive departments' as though it said 'the executive branch'" (Opp. 26) is belied by the most relevant, indeed, dispositive, "historical usage" -- that of Congress when it passed the Act. As shown (Br. 26), when Congress enacted the Act, it understood that "[t]he FTCA currently covers employees of the Executive Branch," H.R. Rep. No. 100-700, at 5, and repeatedly stated as much. Carroll likewise ignores the fact that Congress *said* that it intended the Act to apply specifically to the President. As shown (Br. 23), the legislative history is clear that under the Act, the United States, when substituted as a defendant, would be "able to continue to assert other functional immunities, such as Presidential . . . immunity," *id.* at 5. Moreover, while Carroll did not find the opinion (Opp. 22), the Supreme Court has in fact stated that "the President is the executive department." *Mississippi v. Johnson*, 71 U.S. 475, 500 (1866).

---

[10] Carroll also asserts that if "executive department" meant "executive branch," "it would have been a waste of words" to include "independent establishments" in Section 2671's definition of "federal agency," because, she claims, independent establishments are part of the executive branch but not the executive departments. (Opp. 24.) But it was "a waste of words" to include "independent establishment" in the definition of "federal agency" no matter what, because under 28 U.S.C. § 451, "federal agency" already includes "independent establishments."

Carroll's contention (Opp. 21) -- that the understanding of "'executive departments' as referring only to Cabinet-level agencies in the executive branch . . . is deeply rooted in our legal tradition" -- is irrelevant: whatever "legal tradition" there may have been was displaced by Section 451's directive that executive department means executive branch where, as here, context so shows. For the same reason, Carroll's cases she claims define "executive departments" restrictively (Opp. 22) are also irrelevant. Further, in *United States v. Germaine*, 99 U.S. 508, 510 (1878), the Supreme Court did not reach a conclusion as to the definition of "departments," but merely noted that the Appointment Clause's use of the word "department" "has reference to the subdivision of the power of the Executive." More importantly, however, the Supreme Court explained that if Congress had wanted the statute at issue to reach beyond officers of "departments," it would have used "words to that effect . . ., [such] as . . . . person in the . . . employment of the government," *id.* -- which is precisely what the Act does.

Carroll contends that Congress's amendment to Section 2671 adding "judicial and legislative branches" juxtaposed with the pre-existing "executive departments" purportedly establishes that Congress did not intend executive departments to mean "executive branch," because Congress "left the phrase 'executive departments' even as it added a reference to the other branches.'" (Opp. at 25.) But Congress did not change the word "executive department" because it

14

knew that the Executive Branch was already covered: in making this amendment to the FTCA, Congress itself noted that it intended merely "to make explicit that employees of the judicial and legislative branches are included within the coverage . . . *in the same way as employees of the Executive Branch*," H.R. Rep. No. 100-700, at 8 (emphasis added). *See Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990) ("Congressional inaction lacks 'persuasive significance' because 'several equally tenable inferences' may be drawn from such inaction, 'including the inference that the existing legislation already incorporated the offered change.'" (citation omitted)).

According to Carroll it would "blow[] the door off its hinges" to include the President within the term "executive department." (Opp. 24.) Congress already removed the door in Section 451, which provides that "executive department" means "executive branch" depending on the context. Carroll also states without any support that Congress does not "hide presidents in generic definitional terms." (Opp. 19.) But every court but the District Court below that has decided cases in which the DOJ sought to substitute for the President did not think that the President was hidden at all. Nor, as the legislative history makes clear, did Congress itself.

Carroll contends that "[i]t would have been easy for Congress to add 'the President.'" (Opp. 34.) Under her reasoning, Congress should also have added at

15

least the Vice President and employees of the Executive Office of the President

("EOP"), the SEC, and certain other "freestanding components within the

executive branch."[11]  In fact, the easier way to draft an expansive statute was to do

what Congress did here: provide that the Act applies to "any employee of the

Government," list categories, including non-obvious categories, as examples, and

exclude only that category to which the Act does *not* apply: independent

contractors.  (Br. 19-20.)[12]

## II.    PRESIDENT TRUMP WAS ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT.

### A.    D.C. Law Governs the Scope-of-Employment Question.

There is no dispute that the choice-of-law principles of D.C., the place where

the conduct at issue occurred, govern which law applies to whether the conduct

was within the scope of employment.  (Opp. 41.)

Carroll asserts that under a four-factor D.C. choice-of-law principle, New

York law governs.  That is not the law in D.C.  As the D.C. Circuit has repeatedly

---

[11] Carroll is not even certain of her own construction's meaning.  (*See* Opp. 20 ("[T]he FTCA . . . extends its coverage to . . . *perhaps* a small number of additional freestanding components . . . ." (emphasis added)); *id.* 22-23 ("prior practice and usage *may* support extending the phrase slightly to cover certain freestanding components within the executive branch" like the SEC (emphasis added)); *id.* 28 n.8 ("FTCA may extend beyond the Cabinet" to the EOP).).

[12] As shown (Br. 21-23), Carroll's assertion that, under *Franklin v. Massachusetts*, 505 U.S. 788 (1992), the FTCA cannot apply to the President because it would subject the President's conduct to judicial review is erroneous and turns *Franklin*'s holding on its head.

16

held, scope of employment under the Act is governed by the law of the place where the employment relationship is located -- here, D.C. again.[13] *Allaithi v. Rumsfeld*, 753 F.3d 1327, 1330 (D.C. Cir. 2014); *Jacobs v. Vrobel*, 724 F.3d 217, 221 (D.C. Cir. 2013); *Harbury v. Hayden*, 522 F.3d 413, 417 (D.C. Cir. 2008); *Rasul v. Myers*, 512 F.3d 644, 655 (D.C. Cir.), *vacated on other grounds,* 555 U.S. 1083 (2008); *Majano v. United States*, 469 F.3d 138, 141 (D.C. Cir. 2006); *McNeil v. Duncan*, 2020 WL 1536252, at *4 (D.D.C. Mar. 31, 2020); *Magowan v. Lowery*, 166 F. Supp. 3d 39, 59 (D.D.C. 2016); *Budik v. Ashley*, 36 F. Supp. 3d 132, 139 n.3 (D.D.C. 2014), *aff'd sub nom. Budik v. United States*, 2014 WL 6725743 (D.C. Cir. Nov. 12, 2014); *In re Iraq & Afghanistan Detainees Litig.*, 479 F. Supp. 2d 85, 113 (D.D.C. 2007), *aff'd sub nom. Ali v. Rumsfeld*, 649 F.3d 762 (D.C. Cir. 2011); *Cloonan v. Holder*, 602 F. Supp. 2d 25, 33 n. 9 (D.D.C. 2009) (applying law of place of employment relationship, not where allegedly defamatory letter was

---

[13] Carroll references the test and factors relevant to substantive tort liability, not scope-of-employment under the Act. *See Bailey v. J & B Trucking Servs., Inc.*, 590 F. Supp. 2d 4, 10 (D.D.C. 2008) (applying significant relationship test differently for substantive liability than for *respondeat superior* liability); *Dist. of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C. 1995) (D.C. courts examine "the various jurisdictional interests as applied to the various distinct issues to be adjudicated.").

received).[14]  While D.C. courts have occasionally applied the law of the "state in which the . . . tort occurred," *Ballenger*, 444 F.3d at 663, here, that is also D.C.

> **B.** **The Allegedly Defamatory Statements Were Made Within the Scope of Employment.**
>
> > **1.** ***Addressing Issues of Public Concern is Within the Scope of the President's Employment.***

Contrary to Carroll's assertions (Opp. 51-52, 63), it is Carroll's "burden [to] com[e] forward with specific facts rebutting the certification" by the Attorney General that the conduct was within the scope of employment, *Ballenger*, 444 F.3d at 662; and her allegations are not taken as true, but instead the court "makes its own findings of fact," *Bello v. United States*, 93 F. App'x 288, 289-90 (2d Cir. 2004).

Carroll does not and cannot meet her burden here.  She does not and cannot refute the showing (Br. 32-42) that, as courts routinely recognize, elected officials such as members of Congress -- and therefore *a fortiori* the President -- are "on the job" when, as here, they address or respond to reporters' questions about matters of public concern, including matters relating to the official's private life.

---

[14] In *Does 1-10 v. Haaland*, 973 F.3d 591, 599 (6th Cir. 2020) and *Williams v. United States*, 71 F.3d 502, 506 (5th Cir. 1995), cited by Carroll (Opp. 43), the courts looked in the first instance to the law of the forum, not, as all parties agree is proper here, to the law of the place where the tort occurred.

Carroll contends that Trump's conduct was not within the scope of his employment because, she claims, he made his allegedly defamatory denials of her accusations out of self-interest. That contention is belied by the fact that Carroll made her accusations a matter of public concern, by publishing a magazine article and book, to which the President, *qua* President, is unquestionably expected, and indeed obligated, to respond.

Moreover, it cannot be said that Trump made the allegedly defamatory statements -- issued in a White House press release and in response to reporters' questions at the White House -- solely for personal reasons, without being at all "actuated" by his duties as President. (Br. 33-43.) That is plainly sufficient to bring those statements within the scope of his employment. *See Freiman v. Lazur,* 925 F.Supp. 14, 19 (D.D.C. 1996) (conduct within the scope of employment "even where self-interest is the *predominant* motive . . . so long as the agent is actuated by the principal's business purposes '*to any appreciable extent*.'") (emphasis added) (quoting *Local 1814, Int'l Longshoremen's Ass'n v. Nat'l Lab. Rels. Bd.,* 735 F.2d 1384, 1395 (D.C. Cir. 1984)).[15] *See also Ballenger*, 444 F.3d at

---

[15] Personal motivations are also irrelevant in the Second Circuit. *See Bello v. United States*, 93 F. App'x 288, 290-91 (2d Cir. 2004) (in defamation case, even if defendant's personal animus "informed his subsequent performance of an assigned task -- responding to [relevant] press inquiries . . . -- [it] does not transform that professional task into a personal one.").

663-65 (under scope-of-employment test, which is "objective," "even

a *partial* desire to serve the master is sufficient" (emphasis in original)); *Magowan*

*v. Lowery*, 166 F. Supp. 3d 39, 62 (D.D.C. 2016) (in defamation case, "relevant

inquiry is whether the defendant was motivated at least in part by a desire to serve

her employer"); *Klayman v. Obama*, 125 F. Supp. 3d 67, 83-84 (D.D.C. 2015)

(under applicable test -- whether there is a "*complete absence* of a desire to serve

the principal's interests" -- President Obama acted within the scope of his

employment when he allegedly funded a designated foreign terrorist organization

(Hamas) "because [it] benefit[ed] [him] in various ways") (emphasis added);

*Schecter v. Merch. Home Delivery, Inc.,* 892 A.2d 415, 428 (D.C. 2006) (test asks

whether the agent acted "only to further his own interest" (citation omitted));

*Hechinger Co. v. Johnson*, 761 A.2d 15, 24 (D.C. 2000) (conduct falls within

scope of employment "if the employee acts in part to serve his employer's interest

. . . even if prompted partially by personal motives, such as revenge").[16]

---

[16] Carroll's cases (Opp. 44, 60-62) are entirely in accord. *Dist. of Columbia v. Bamidele*, 103 A.3d 516, 525 (D.C. 2014) (scope-of-employment test satisfied even if "prompted partially by personal motives, such as revenge"); *Swarna v. Al-Awadi*, 622 F.3d 123, 144-45 (2d Cir. 2010) (diplomats were not acting within the scope of employment when subjecting plaintiff to "forced labor, involuntary servitude, and sexual slavery" because motives were "unrelated to the furtherance of the employer's business" (citations omitted)); *Majano v. United States*, 469 F.3d 138, 142 (D.C. Cir. 2006) (permitting jury to determine whether assault was "*solely* for the accomplishment of [her] independent malicious or mischievous purposes." (emphasis added)); *Ierardi v. Sisco*, 119 F.3d 183, 188 (2d Cir. 1997) (sexual harassment and assault by defendant, who was not in supervisory role,

### 2.     *It is Irrelevant that Defamation is an Intentional Tort.*

Carroll argues (Opp. 45-46) that defamation is an intentional tort, Trump's

conduct was "outrageous,"[17] and therefore under the Restatement § 245 cmt. f, he

---

could not have been related to employment); *Jordan v. Medley*, 711 F.2d 211, 216 (D.C. Cir. 1983) (examining whether in assaulting an unarmed woman with an assault rifle, employee had "*any* intent to serve . . . employer" or if it "was *entirely* the consequence of a personal animosity" (emphasis added)); *M.J. Uline Co. v. Cashdan*, 171 F.2d 132, 134-35 (D.C. Cir. 1948) (finding issue of fact as to hockey player's motive in hitting a spectator and concluding that it would be in the scope of employment even if the defendant hit the plaintiff to try "to make [the game] interesting," but outside the scope if the defendant was "actuated *only* by anger or hostility toward the [plaintiff]." (emphasis added)); *N.X. v. Cabrini Med. Ctr.*, 97 N.Y.2d 247, 251 (2002) (physician's sexual assault of unconscious patient was "a clear departure from the scope of employment"); *Demas v. Levitsky*, 291 A.D.2d 653, 661 (3d Dep't 2002) (defendant passing off plaintiff's work as his own was "unrelated to the furtherance of [University's] business"); *Overton v. Ebert*, 180 A.D.2d 955, 956-57 (3d Dep't 1992) (negligence during trip to store "to purchase soda and chips for his own consumption" outside the scope where there was "no evidence in the record that . . . [their] consumption . . . during his morning break was . . . even helpful to the performance of his duties"); *Heindel v. Bowery Sav. Bank*, 138 A.D.2d 787, 788 (3d Dep't 1988) (rape of 15-year-old girl constituted "a complete departure from the normal duties of a security guard").

[17] Carroll cites cases holding that sexual harassment or assault is not within the scope of employment. But those holdings rest on the fact that -- completely unlike an elected official commenting on or responding to accusations which are a matter of public concern -- sexual harassment or assault of course could not be actuated by a desire to serve the principal, *see infra* 27, because it is not conceivably conduct an employee could be employed to do. Carroll tries to link the rule applicable to sexual harassment and assault to purportedly "related torts," which she claims includes defamation*,* citing *Rausman v. Baugh*, 248 A.D.2d 8 (2d Dep't 1998). *Rausman* has no application here. There, the court recognized that conduct is within the scope of employment unless defendant acts "*solely* for personal motives" but found that a defamatory false accusation of sexual harassment was not an authorized task. *Id.* (emphasis added).

21

did not act within the scope of his employment.[18]  (Opp. 45.)  But the Restatement

factors and cases she cites concern use of force and do not apply to defamation

claims.  *Ballenger*, 444 F.3d at 663.[19]

Nor can it possibly be said that Trump's denial of Carroll's accusations was

more "outrageous" than the scores of cases in which courts found defendants to be

acting within the scope of employment when committing rape, torture, or armed

assault, accusing a Muslim group of sponsoring terrorism, or outing a covert agent.

*See, e.g.*, Br. 40-42, 44-45 (collecting cases); *Smith v. Clinton,* 886 F.3d 122, 126-

27 (D.C. Cir. 2018) (diplomat allegedly killed by terrorists because Secretary of

---

[18] Carroll also cites *Penn Cent. Transp. Co. v. Reddick*, but that inapposite case held that a railroad brakeman physically assaulting a taxi driver for using the restroom before transporting him was not within the scope of employment because it was "in *no* degree committed for" the employer's benefit. 398 A.2d 27, 30, 32 (D.C. 1979) (emphasis added).

[19] Under the section of the Restatement applicable to defamation claims, "[t]he motive of the spokesman [is] . . .  immaterial if the master has apparently designated him to speak." Restatement § 247 cmt. c; *see also Am. Soc'y. of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 566 (1982) (same); *Brumfield v. Sanders*, 232 F.3d 376, 381 (3d Cir. 2000) (applying Restatement § 247 to Act). In each of the only defamation cases Carroll cites, the employees were not authorized to speak. *See Armstrong v. Thompson*, 759 F. Supp. 2d 89, 94 (D.D.C. 2011) (accusing a former co-worker of misconduct not within the scope of employment because "she did not have the authority to disclose [those facts]."); *Demas*, *supra* 21 n.16; *Rausman*, *supra* 21 n.17. Carroll spills much ink on a court's rejection of a town councilwoman's argument that defaming a coworker by making false police reports was within the scope of authority, where her duties did not include filing police reports.  (Opp. 46-49 (citing *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143 (E.D.N.Y. 2003).) That is a far cry from finding that the President's duties do not include responding to reporters' questions on matters of public concern.

22

State used private email server); *Wilson v. Libby*, 535 F.3d 697, 711 (D.C. Cir. 2008) ("disclosure of a covert agent's identity" was within the scope of employment even though it was allegedly "unlawful and threaten[ed] the security of the nation"); *Steele v. Meyer*, 964 F. Supp. 2d 9, 17 (D.D.C. 2013) ("District of Columbia courts have found 'sexual harassment, a shooting, armed assault, and rape' within the scope of a defendant's employment.") (citation omitted)); *In re Iraq & Afghanistan Detainees Litig.*, 479 F. Supp. 2d 85, 113-14 (D.D.C. 2007) (torture).

In arguing that Trump's statements were "outrageous," Carroll does not take issue with Trump's denial of her accusations, which she tacitly concedes fall within the scope of office. (Opp. 53.) However, Carroll characterizes other portions of the statements as "vicious[] and quite personal[] attack[s]" that are beyond the scope. (*Id.* at 51) But what Carroll considers to be "outrageous" -- and she mischaracterizes Trump's statements[20] -- courts consider non-actionable opinion. *See Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 382 (1977) ("inquiry into motivation is within the scope of absolute [opinion] privilege"); *Sabharwal & Finkel, LLC v. Sorrell*, 117 A.D.3d 437, 437-38 (1st Dep't

---

[20] For example, Carroll says Trump "mocked her appearance" when he said "I'll say it with great respect . . . she's not my type" (Opp. 51, A42 ¶97) and charged that "she had made the whole thing up for financial gain" because he asked the public for information (A38 ¶82).

23

2014) (accusing plaintiff of trying to "extort money" non-actionable opinion); *Weiner v. Doubleday & Co.*, 142 A.D.2d 100, 105 (1st Dep't 1988) (dismissing defamation claim for calling plaintiff "ugly" because "there can be no action for libel based upon opinion, expressed in the form of epithets"), *aff'd*, 74 N.Y.2d 586 (1989).[21]

Finally, even in the "use of force" context, the principal test is not whether the conduct is outrageous, but whether, if unauthorized, it is "unexpectable." Restatement § 245; *Lowy v. Travelers Prop. & Cas. Co.*, 2000 WL 526702, at *4 (S.D.N.Y. May 2, 2000) (past behavior rendered conduct foreseeable and within scope of employment); *Riviello v. Waldron*, 47 N.Y.2d 297, 303 (1979). Crediting Carroll's allegations, Trump's conduct was not only expectable, but part of his "modus operandi." (A33-34 ¶¶62, A82-83 ¶99, A87-88 ¶¶123-27; Opp. 57.)

### C. Carroll's Test Is Non-Justiciable.

Carroll's contention that whether allegedly defamatory conduct is within the scope of employment turns on the content, rather than the context, of the allegedly defamatory statements is not only erroneous but is particularly unworkable when

---

[21] The cases Carroll cites (Opp. 54) are again entirely inapposite inasmuch as they involve use of force and the conduct was clearly not authorized. *See Penn Cent.*, *supra* 22 n.18; *Armstrong*, *supra* 22 n.19; *Dist. of Columbia v. Coron*, 515 A.2d 435, 438 (D.C. 1986) (policeman dressed as a civilian driving his own car was not acting in scope of employment when drunkenly assaulting plaintiff). As shown (Br. 37-38), *Clinton v. Jones*, 520 U.S. 681 (1997), only supports that Trump was acting within the scope of office.

24

applied to the President.  Carroll would have this Court determine, among other things, whether "Trump had any presidential obligation to make these statements" and whether the particular manner in which he denied those statements were consistent with those obligations.  (Opp. 53-54.)   That would place this Court in the position of second-guessing decisions by the President concerning Presidential prerogatives -- an improper encroachment by the Judicial Branch on the Executive Branch's decision-making process.  *See Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 389-90 (2004) (forcing the Judiciary to evaluate "the Executive's Article II prerogatives" places the Executive Branch and the Judicial Branch on a "collision course," and "should be avoided whenever possible.").

The D.C. Circuit has thus recognized that courts must dismiss cases involving non-justiciable political questions, which, as here, concern issues committed to coordinate political departments, require "policy determination of a kind clearly for nonjudicial discretion," or are impossible to resolve "without expressing lack of respect due coordinate branches of government." *See Schneider v. Kissinger*, 412 F.3d 190, 194, 198 (D.C. Cir. 2005) (dismissing suit where court "could not determine Appellants' claims without passing judgment on the decision of the executive branch").  So too, here, the courts are not in a position to pass judgment on the decisions of the President in addressing the nation on a matter of public concern -- a core part of the President's official responsibilities.  *See*

25

*generally* Br. 37-38; *see also New York Times Co. v. U.S. Dep't of Def.*, 499 F. Supp. 2d 501, 516 (S.D.N.Y. 2007) (communications about President's radio address covered by within executive privilege because they relate to a "presidential decision" concerning official duties); *In re Grand Jury Proceedings*, 5 F. Supp. 2d 21, 25-26 (D.D.C. 1998) (President Clinton's communications concerning how to respond to Monica Lewinsky affair were "in the President's performance of his official duties," because "the President does need to address personal matters in the context of his official decisions"), *aff'd sub nom. In re Lindsey*, 148 F.3d 1100 (D.C. Cir.), *aff'd in part, rev'd in part on other grounds*, 158 F.3d 1263 (D.C. Cir.).

Carroll argues that "Appellants' proposed test would automatically find any elected federal official to be within the scope of their employment anytime they respond to anyone . . . who criticizes them in any way." (Opp. 58-59.) But Congress excluded defamation from its waiver of sovereign immunity in the FTCA because "officials should not be hampered in their writing and speaking by the possibility that their actions would give rise to government liability." *Quinones v. United States*, 492 F.2d 1269, 1280 (3d Cir. 1974); *see also Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 317 (4th Cir. 2012) (same). And, as shown (Br. 46-47), the Supreme Court has already resolved Carroll's policy concerns over defamation claims in favor of immunity. If there is an issue with the Act, it should be taken up with Congress, not this Court.

**D.     On-Point Authority Confirms that Trump Acted Within the Scope of Employment.**

Carroll does not and cannot distinguish the wealth of authority (Br. 33-34) holding that an elected official responding to inquiries on a matter of public concern acts within the scope of employment or offer any reason why it should not be followed.  She argues that, in those cases, the defendants' statements were not "targeted and personal" or did not involve "cause for personal animus and retaliation."  (Opp. 63.) That is false.  *See, e.g.*, *Wuterich v. Murtha*, 562 F.3d 375, 384-85 (D.C. Cir. 2009) (accusing plaintiff of murdering civilians in Iraq to allegedly "embarrass" Defense Secretary Rumsfeld within scope); *Libby*, 535 F.3d at 711-12 (outing covert CIA operative because she was married to a critic of the administration held within the scope because "[o]f course, the defendants may discredit public critics of the Executive Branch.").

In particular, Carroll tries to downplay *Ballenger*, on the purported ground that there was "no evidence of any animus" and the statements were not "malicious" -- (Opp. 66) even though in that case a Congressman, without prompting and for personal reasons to distract from his marital issues, accused a Muslim nonprofit NGO of sponsoring terrorism.  By contrast, here, the President

27

was merely responding to questions addressing a matter of public concern of

plaintiff's own creation.[22]

Dated:      New York, New York.      Respectfully submitted,
                 June 7, 2021

                                               KASOWITZ BENSON TORRES LLP

By:    */s/ Marc E. Kasowitz*
        Marc E. Kasowitz
        Christine A. Montenegro
        Paul J. Burgo

        1633 Broadway
        New York, New York 10019
        T: (212) 506-1700
        E: mkasowitz@kasowitz.com
           cmontenegro@kasowitz.com
           pburgo@kasowitz.com

        *Attorneys for Defendant-Appellant,*
        *President Donald J. Trump*

---

[22] There is no basis for Carroll's request that the case be remanded for discovery. There are no material disputed facts here. Trump's conduct was unquestionably at least in part within the scope of his employment. *Ballenger*, 444 F.3d at 663. That ends the inquiry.

**Federal Rules of Appellate Procedure Form 6.**
**Certificate of Compliance With Rule 32(a)**

**Certificate of Compliance With Type-Volume Limitation,**
**Typeface Requirements and Type Style Requirements**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

This brief contains 6999 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and the type style required of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft® Office Word, in 14 pt. font size, Times New Roman.

*/s/ Marc E. Kasowitz*