20-3977 (L)
*E. Jean Carroll v. Donald J. Trump*

# In the
# United States Court of Appeals
## For the Second Circuit

---

August Term, 2021
Docket Nos. 20-3977-cv (L), 20-3978-cv (Con)

E. JEAN CARROLL,
*Plaintiff-Appellee,*

*v.*

DONALD J. TRUMP, IN HIS PERSONAL CAPACITY,
*Defendant-Appellant,*

UNITED STATES OF AMERICA
*Movant-Appellant.*

---

On Appeal from the United States District Court for the Southern District of New York.

---

ARGUED: DECEMBER 3, 2021
DECIDED: APRIL 21, 2023

Before: CALABRESI, CHIN, and NARDINI, *Circuit Judges*.

---

Defendant-Appellant Donald J. Trump and Movant-Appellant the United States of America appeal from a judgment of the United States District Court for the Southern District of New York (Kaplan, *Judge*) denying their motion to substitute the United States in this action pursuant to the Westfall Act of 1988. In our prior opinion, we vacated the district court's judgment that Trump did not act within the scope of his employment, and we certified to the D.C. Court of Appeals the following question: Under the laws of the District, were the allegedly libelous public statements made, during his term in office, by the President of the United States, denying allegations of misconduct, with regards to events prior to that term of office, within the scope of his employment as President of the United States? The D.C. Court of Appeals reformulated our certified question in two parts, asking (1) whether the D.C. Court of Appeals should opine on the scope of the President of the United States' employment, and (2) how the court might clarify or modify the District of Columbia's law of *respondeat superior* to resolve the issue in this appeal. The D.C. Court of Appeals answered the former part in the negative and provided additional guidance in response to the latter. Having vacated the district court's judgment in our prior opinion, we REMAND for further proceedings consistent with the guidance provided in the D.C. Court of Appeals' opinion.

---

> MARK R. FREEMAN, Appellate Staff Civil Division, U.S. Department of Justice (Mark B. Stern and Joshua M. Salzman, Appellate Staff Civil Division, U.S. Department of Justice, *on the brief*), *for* Jennifer B. Dickey,

2

Acting Assistant Attorney General, *for Movant-Appellant United States of America*.

ALINA HABBA, Habba Madaio & Associates LLP, Bedminster, NJ (Marc Kasowitz, Christine A. Montenegro, Paul J. Burgo, Kasowitz Benson Torres LLP, New York, NY, *on the brief*), *for Defendant-Appellant Donald J. Trump*.

JOSHUA A. MATZ, Kaplan Hecker & Fink, LLP, New York, NY (Roberta A. Kaplan, Raymond P. Tolentino, Kaplan Hecker & Fink, LLP, New York, NY, Leah Litman, Ann Arbor, MI, *on the brief*), *for Plaintiff-Appellee E. Jean Carroll*.

Zoe Salzman, Emery Celli Brinckerhoff Abady Ward & Maazel LLP, New York, NY, *for Amici Curiae The Rape, Abuse & Incest National Network (RAINN); Time's Up Foundation; Legal Momentum, The Women's Legal Defense and Education Fund; The National Alliance to End Sexual Violence; The National Center for Victims of Crime (NCVC); The New York City Alliance Against Sexual Assault; and Safe Horizon*.

---

PER CURIAM:

As explained more fully in our prior opinion, *see Carroll v. Trump*, 49 F.4th 759 (2d Cir. 2022) ("*Carroll I*"), familiarity with which we assume, this case requires us to determine whether, under the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the "Westfall Act"), 28 U.S.C. § 2679 *et seq.*, the President of the United States is eligible for absolute immunity from personal liability for alleged tortious conduct while on the job.  In 2019, when Defendant-Appellant Donald J. Trump was President of the United States, Plaintiff-Appellee E. Jean Carroll publicly accused him of sexual assault and rape, which she alleged occurred in the mid-1990s.  Trump responded to Carroll's accusations with a series of public statements, which, per Carroll's complaint, not only denied her allegations but also accused her of making false statements about him and insulted her personal appearance.  Carroll sued Trump in New

4

York State Supreme Court, alleging that his public statements were defamatory under New York law.

The Attorney General of the United States, through a delegate, intervened in the suit and certified that Trump acted "within the scope of his office as President of the United States" when he made the public statements denying Carroll's allegations. App'x at 15. Pursuant to the Westfall Act, that certification meant that Carroll's claim would be "deemed an action against the United States" and that the United States would be "substituted as the party defendant." 28 U.S.C. § 2679(d)(1). Accordingly, the government removed the case to the United States District Court for the Southern District of New York and moved to substitute the United States for Trump. The District Court (Kaplan, *Judge*) denied the motion to substitute, holding that the President is not an "employee of the Government" under the Westfall Act, and, in the alternative, that Trump did not act within the scope of his employment when he allegedly defamed

Carroll. *Carroll v. Trump*, 498 F. Supp. 3d 422, 443, 457 (S.D.N.Y. 2020). The government and Trump appealed from that judgment.

Under the Westfall Act and the circumstances of this case, substitution by the United States is warranted and absolute immunity for the President applies only if (1) the President is an "employee of the Government" and (2) the tortious conduct alleged was within the scope of the President's employment. 28 U.S.C. § 2679(b)(1). As to the first prong, we held in our prior opinion, with one member of the panel dissenting, that the President is an employee of the government under the Westfall Act. *Carroll I*, 49 F.4th at 772; *see id.* at 789 (Chin, J., *dissenting*). But we expressed our uncertainty on the second prong because the law governing the scope of employment inquiry—District of Columbia *respondeat superior* law—seemed to oscillate between two different doctrinal frameworks: a narrow, more traditional view, requiring evidence that an intentional tort benefit, or be for the purpose of benefiting, the employer, and a broader, more

6

modern view, which would treat any intentional tort fairly considered to be a part of the risks of an employer's activity as falling within the scope of employment. *Id.* at 774-75, 780.

Because of our uncertainty and the public significance of the underlying issue, *see, e.g.*, *Companhia Brasileira Carbureto de Calicio v. Applied Indus. Materials Corp.*, 640 F.3d 369, 373 (D.C. Cir. 2011) (noting that the D.C. Circuit has certified questions to the D.C. Court of Appeals "when District of Columbia law is genuinely uncertain and the question is of extreme public importance" (internal quotation marks omitted)), we certified the following question to the D.C. Court of Appeals, subject to the recognition that the court could reformulate the question as it deemed appropriate:

> Under the laws of the District, were the allegedly libelous public statements made, during his term in office, by the President of the United States, denying allegations of misconduct, with regards to events prior to that term of office, within the scope of his employment as President of the United States?

7

*Carroll I*, 49 F.4th at 781. The D.C. Court of Appeals graciously accepted our certified question and reframed the inquiry into two parts. The first part asked whether the D.C. Court of Appeals "should opine" on "the scope of the President of the United States' employment." *Trump v. Carroll*, — A.3d —, 2023 WL 2920882, at *1 (D.C. Apr. 13, 2023) (quoting Order Accepting Certified Question at 2, *Trump v. Carroll*, No. 22-SP-745 (Oct. 25, 2022)). The second part considered how the D.C. Court of Appeals might "clarify or modify" District of Columbia *respondeat superior* law "to help resolve the present dispute." *Id.*

We will allow the D.C. Court of Appeals' detailed and thorough response to our certified question to speak for itself, but, in short, that court answered the first part of its reformulated question—whether it should opine on the President's scope of employment—in the negative. It reasoned that "whether the President of the United States was acting within the scope of his employment is a question for

8

the factfinder," *id.* at *2, and declined to address such a "factbound question" at this stage of the proceedings, *id.* at *1. The D.C. Court of Appeals provided further guidance in response to the second part of its reformulated question. Specifically, it clarified that the District of Columbia "generally adheres to the Restatement (Second) of Agency's statement of *respondeat superior* law as expressed in § 228" and "has adopted the framework as set forth in § 228(1)(a)-(d) and § 228(2)." *Id.* The court also stated that the District of Columbia "is not an 'internalization' jurisdiction," *id.*—that is, a jurisdiction that "hold[s] employers liable for all torts fairly regarded as risks of their business," *id.* at *5. Additionally, it declined to adopt a categorical reading of *Council on American Islamic Relations v. Ballenger*, 444 F.3d 659 (D.C. Cir. 2006). *Id.* at *1. Such a reading "would hold that the conduct of elected officials speaking to the press is always within the scope of that official's employment," but the District of Columbia instead "adhere[s] to a fact-bound inquiry to determine whether the

9

conduct of an employee is within the scope of employment." *Id.* at *14.

Having vacated in our prior opinion the District Court's judgment that Trump did not act within the scope of his employment, *Carroll I*, 49 F.4th at 761, we now REMAND to the district court for further proceedings consistent with the detailed guidance provided by the D.C. Court of Appeals. The Clerk is directed to issue the mandate forthwith.